IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA**
**FOR THE USE OF CDEEM, CO.**
**15502 Stoneybrook West Parkway**
**Suite 248**
**Winter Garden, Florida 34787**
      Plaintiff
And,

**CDEEM, Co.**
**15502 Stoneybrook West Parkway**
**Suite 248**
**Winter Garden, Florida 34787**
      Plaintiff
v.

**CONCIERGE BUSINESS SOLUTIONS, INC.**
**1801 Austell Road**
**Marietta, Georgia 30008**
      Defendant

And

**AMERICAN ALTERNATIVE INSURANCE CORPORATION**
**555 College Road, East**
**P.O. Box 5241**
**Princeton, New Jersey 08543**
      Defendant

> ELECTRONICALLY
> FILED
> 10/19/2023
> U.S. DISTRICT COURT
> Northern District of WV

3:23-cv-220 Groh

## COMPLAINT

NOW COME the Plaintiffs, United States of America for the use of CDEEM, Co, and CDEEM, Co., by and through Gene W. Bailey, II, Esquire, and David F. Nelson, Sr., Esquire, and the law firm of Hendrickson & Long, PLLC, and for their complaint against Concierge Business Solutions, Inc., and American Alternative Insurance Corporation, state as follows:

**PARTIES**

1. Use-Plaintiff and Plaintiff CDEEM, Co. (hereinafter "Plaintiff" or "CDEEM"), is a Florida corporation with its principal place of business located at 15502 Stoneybrook West Parkway Suite 248, Winter Garden, Florida. At all times relevant herein, CDEEM, Co., was engaged in business as an electrical contractor at a federal construction project located in Berkeley County, West Virginia.

2. On information and belief, Concierge Business Solutions, Inc., ("CBS") is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 1801 Austell Road Southwest, Marietta, Georgia 30008. At all relevant times, CBS was registered to do business in West Virginia as a general construction contractor and was the general contractor on a Veteran's Administration Hospital construction project located in Berkeley County, West Virginia.

3. On information and belief, American Alternative Insurance Corporation ("AAIC") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 555 College Road, East, P.O. Box 5241, Princeton, New Jersey 08543. Upon information and belief, AAIC also does business under the name of Munich Reinsurance Company and/or Munich Re. At all relevant times herein, AAIC was registered as an insurance company in West Virginia and regularly engaged in business in the State of West Virginia.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter arises under 40 U.S.C. §3131 *et seq.* (the "Miller Act") and involves claims arising from the Martinsburg VA Hospital project described herein, for which certain payment bond was

issued by and on behalf of CBS as Principal and by AAIC as the surety. This is an action to collect sums owed for labor, materials, equipment, and services provided by CDEEM as a subcontractor to CBS on said construction project. The Court also has jurisdiction pursuant to 28 U.S.C. §1332 as this action involves a matter in which the amount in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different states. This Court also has jurisdiction pursuant to 28 U.S.C. §1332 as this matter involves an action on a bond executed under the Miller Act and also has supplemental jurisdiction over this matter pursuant to 28 U.S.C. §1367 as the other claims set forth herein are so related that they form part of the same case or controversy.

5. Venue is proper in this Court pursuant to 40 U.S.C §3133(b)(3)(B) as the construction project at issue is located in Martinsburg, Berkeley County, West Virginia.

## STATEMENT OF FACTS

6. On information and belief, on or about May 17, 2022, the Department of Veteran Affairs VAMC 613 (hereinafter referred to as the "VA" or "Owner") awarded a contract for Project 36C24521B0011 ("Prime Contract") – a project to renovate and/or expand a 47-bed portion of the VA hospital located in Martinsburg, West Virginia, (from now on referred to as the "Project") to CBS.

7. On information and belief, under the Prime Contract and the Miller Act, CBS as the principal, and AAIC as the surety, did execute and deliver a payment bond to the Owner identified as Payment Bond No. 00036943 in the total penal sum of Seven Million Dollars ($7,000,000) (hereinafter referred to as "Payment Bond"), to which CBS and the surety bound themselves, conditioned upon CBS promptly making payment to all persons having a direct relationship with CBS or a subcontractor of CBS for furnishing labor, material, or both in the

prosecution of the work provided form in the Prime Contract and any authorized modifications of the Prime Contract subsequently made. A copy of the Payment Bond is attached as "Exhibit 1."

8. On or about August 11, 2022, CBS entered into a Subcontract Agreement with CDEEM (hereinafter referred to as the "August Subcontract"), to provide "material, labor and equipment to effectively execute services" for Divisions 26, 27 & 28 of the Prime Contract. The total amount of the August Subcontract was One Million One Hundred Thousand Dollars ($1,100,000). A copy of the August Subcontract is attached as "Exhibit 2." The August Subcontract specifically included a term stating that CDEEM's July 13, 2022 bid proposal (hereinafter "Bid" or "Quote") was incorporated into the Subcontract. A copy of the July 13, 2022 Quote is attached as "Exhibit 3." The Quote contained specific and conspicuous Exclusions, including an exclusion of any "Paid when Paid contract/terms and conditions." The Quote also expressly required "Payments received within due 25 days from invoice date" and again included bold language stating that "NO PAID WHEN PAID Contract can be accepted."

9. On or about November 9, 2022, after CBS asked CDEEM to increase the total amount of labor, materials, equipment, and services to be provided, CBS and CDEEM entered into an amended contract ("November Subcontract"). A copy of the November Subcontract is attached as "Exhibit 4." Although not identical to the August Subcontract, the November Subcontract included language in Paragraph 6(j) – Payment which stated that CBS would "pay according to the payment terms set out in Exhibits and/or Quotes agreed to for each job."

10. Pursuant to the August Subcontract and the November Subcontract, CDEEM proceeded to perform, providing labor, materials, and services under each of the agreements at times scheduled and requested by CBS. The last of these services, labor, and delivery of

materials and/or equipment took place on May 12, 2023.  Under the contract, the total amount owed for the labor, services, materials, and equipment is $336,443.40, all of which remains unpaid.

11. More than 90 days but less than one (1) year has elapsed since CDEEM performed the labor, and provided materials, equipment, and services under the subcontracts.

12. On August 30, 2023, CDEEM presented a written claim to AAIC and CBS for payment of all unpaid amounts for its labor, materials, equipment, and services. CBS then objected to CDEEM's submission of a bond claim to AAIC, alleging that it has no obligation to pay CDEEM until it has been paid by the Owner.

13. Under the Miller Act, contract terms relieving the principal from the obligation to pay a Subcontractor until paid by the Owner are unenforceable against the Subcontractor in making a bond claim.  *United States ex rel. Straightline Corp. v. Am. Cas. Co*, 2007 U.S. Dist. LEXIS 50688, 2007 WL 2050323 (N.D. W.Va. July 12, 2007), citing *U.S. ex rel. T.M.S. Mech Contractors v. Millers Mut. Fire Ins. Co of Tex,* 942 F.2d 946, 949, n.6 (5th Cir 1991).

15. CBS has wrongfully and unilaterally withheld payment from CDEEM in the amount of $336,443.40 for services, labor, materials, and equipment provided under the subcontracts.  In addition to wrongfully depriving CDEEM of monies owed, CDEEM also has been forced to advance funds to its equipment and material suppliers without first having received payment.  As a result of this, CDEEM is being charged finance and interest charges by its own vendors, all of which have caused and will continue to cause CDEEM damages.

16. Additionally, after May 12, 2023, CBS has excluded CDEEM from the subject work site.  As a result of this conduct, CDEEM has been deprived of its access to its tools, materials, and other property that it has not been permitted to retrieve from the work site.

17.     Prior to CBS's refusal to timely pay, CDEEM had completed all of its work and obligations under the subcontracts and is entitled under the subcontracts and the Payment Bond to payment for the unpaid labor, materials, and services as provided on the Project, which amounts to $336,443.40.

18.     Pursuant to the applicable law and the terms of the subcontracts, CDEEM is entitled to prompt payment of amounts due, along with interest and finance charges, together with its attorney's fees and costs.

19.     Except as otherwise may have been waived or excused, CDEEM has satisfied all conditions precedent to bringing this action.

## COUNT I
## MILLER ACT BOND CLAIM
### (American Alternative Insurance Corporation and CBS)

20.     Paragraphs 1 through 19 are repeated and incorporated herein by reference as if fully set forth.

21.     AAIC, as the surety, is obligated to pay CDEEM under the Payment Bond for the labor, materials, services, equipment, and work it furnished for CBS on the Project, and is liable for all unpaid amounts due to CDEEM for which the Payment Bond is applicable.

22.     Despite demands for payment, CBS and AAIC have failed to make such payment to CDEEM and have failed to fulfill their obligations under the Payment Bond.  CDEEM is entitled to payment pursuant to the Miller Act, 40 U.S.C. §3133.

WHEREFORE, Plaintiff, United States of America for the use of CDEEM and Plaintiff CDEEM, demand judgment against the Defendants, CBS and AAIC, jointly and severally in an amount to be established at trial of at least $336,443.40, along with any finance charges made by

its suppliers, and also with pre-judgment and post-judgment interest, attorney's fees, costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

## COUNT II
## BREACH OF CONTRACT
## (CBS)

23. Paragraphs 1 through 22 are repeated and incorporated herein by reference as if fully set forth.

24. As set forth above, prior to CBS's breach of the subcontracts, CDEEM has performed its work and otherwise satisfied its obligations under the subcontracts.

25. Defendant CBS has failed to pay CDEEM all amounts due under the subcontracts; has mismanaged and failed to properly supervise, schedule, coordinate, and administer the Project and its contractor; and has otherwise materially breached the subcontracts. Despite demands for payment, CBS has failed and refused to pay CDEEM the amounts to which it is entitled. By excluding CDEEM from the work site, CBS has also prevented CDEEM from recovering its tools, equipment and property from the work site.

26. As a direct and proximate result of CDEEM's material breach of the subcontracts, Plaintiff has and will continue to sustain costs, losses, expenses, and other damages for which CBS is liable to Plaintiff, including but not limited to costs and expenses relating to restocking costs, fees, and charges from vendors to whom CDEEM had submitted purchase orders to fulfill the terms of the subcontracts.

WHEREFORE, Plaintiff CDEEM, demands judgment against CBS in an amount to be established at the trial of at least $336,443.40, along with finance and restocking charges made by its suppliers, and also with pre-judgment and post-judgment interest, attorney's fees and costs,

and other damages; and further prays for such other relief as this Court deems just and appropriate.

## COUNT III
## UNJUST ENRICHMENT
## (CBS)

27. Paragraphs 1 through 26 are repeated and incorporated herein by reference as if fully set forth.

28. Defendant CBS requested and directed CDEEM to provide and furnish the aforesaid labor, materials, equipment, work, and services to benefit CBS. CBS knew and understood that CDEEM had expressly advised CBS that it would not provide services on a "paid if paid" basis. In doing so, CDEEM conferred benefits on CBS for which CBS has failed to pay CDEEM.

29. Defendant CBS was aware and had knowledge of the benefits conferred upon it by CDEEM and, wrongfully secured said benefits or has passively received those benefits which would be unconscionable to retain.

30. Defendant CBS' acceptance and retention of the benefits without payment, and under the circumstances amount to a windfall and make it inequitable for CBS to retain the benefits without payment for their value to Plaintiff. Furthermore, certain of said benefits were obtained from Plaintiff by fraud, duress, or the taking of an undue advantage thereof.

WHEREFORE, Plaintiff CDEEM demands judgment against the Defendant CBS in an amount to be established at trial of at least $336,443.40, along with finance charges made by its supplies, and also with pre-judgment and post-judgment interest, attorney's fees and costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

## COUNT IV
## PROMISSORY ESTOPPEL
## (CBS)

31. Paragraphs 1 through 30 are repeated and incorporated herein by reference as if fully set forth.

32. CBS promised that it would pay CDEEM for its work, labor, materials, and equipment within 25 days of a proper invoice for its work and without any "paid if paid" terms and conditions. Furthermore, CDEEM's reliance upon the promise of prompt payment was foreseeable to CBS.

33. CBS' promise to CDEEM actually induced the Plaintiff to perform said work and Plaintiff substantially relied upon the promise of payment for the work to its detriment.

34. CDEEM has made a claim for payment against CBS for its work, but the payment for that work has been wrongfully denied by CBS. Injustice will result if CBS' promise to pay for its work is not enforced.

WHEREFORE, Plaintiff CDEEM demands judgment against the Defendant CBS in an amount to be established at trial of at least $336,443.40, along with finance charges made by its suppliers, and also with pre-judgment and post-judgment interest, attorneys' fees, and costs and other damages and further prays for such other relief as this Court deems just and appropriate.

## COUNT V
## QUANTUM MERUIT
## (CBS)

35. Paragraphs 1 through 34 are repeated and incorporated herein by reference as if fully set forth.

36. The Plaintiff rendered valuable services to CBS for certain work to be performed under the Prime Contract and the subcontracts with the intention of being paid for those services,

labor, materials and equipment. CBS accepted those services, received the benefit of such services, and knew that CDEEM expected to be promptly and timely paid for its work, materials and services.

37. All of the aforementioned services, materials and work rendered by CDEEM to CBS were rendered under such circumstances that CBS knew that Plaintiff expected to be paid.

WHEREFORE, Plaintiff, CDEEM, demands judgment against Defendant CBS in an amount of at least $336,443.40, along with finance charges made by its suppliers, and also with pre-judgment and post-judgment interest, attorney's fees and costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES**.

**CDEEM CO.**

**By Counsel**

**/s/ David F. Nelson, Sr.**
David F. Nelson, Sr., Esquire
W.Va. Bar No. 5754
Gene W. Bailey, II, Esquire
W.Va. Bar No. 0203
Hendrickson & Long, PLLC
P.O. Box 11070
Charleston, WV 25339
(304) 346-5500
(304) 346-5515 (fax)
(304) 720-5518 (direct dial)
dnelson@handl.com